No. 23-3758

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

William Couser; Summit Carbon Solutions, LLC,

Plaintiffs-Appellees,

vs.

Shelby County, Iowa; Shelby County Board of Supervisors; Steve Kenekl, in his official capacity as a Shelby County Supervisor; Charles Parkhurst, in his official capacity as a Shelby County Supervisor; Darin Haake, in his official capacity as a Shelby County Supervisor,

Defendants-Appellants.
_____

No. 23-3760
_____

William Couser; Summit Carbon Solutions, LLC,

Plaintiffs-Appellees,

vs.

Story County, Iowa; Story County, Board of Supervisors; Latidah Faisal, in her official capacity as Story County Supervisor; Linda Murken, in her official capacity as Story County Supervisor; Lisa Heddens, in her official capacity as Story County Supervisor,

Defendants-Appellants.
_____

**ON APPEAL FROM UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA - CENTRAL**

_____

**Brief of Amici Curiae Minnesota, Michigan, Oregon, and Vermont in Support of Appellants and Rehearing**

_____

KEITH ELLISON
Attorney General
State of Minnesota

RYAN V. PETTY #0401053
Assistant Attorney General

445 Minnesota Street, Suite 600
St. Paul, MN 55101-2127
Telephone: (651) 300-7828
ryan.petty@ag.state.mn.us

*Attorney for Amici Curiae State of Minnesota, et al.*

*(Additional Counsel of Signature Page)*

## STATEMENT UNDER FED. R. APP. P. 29(a)(4)(D)

Minnesota, Michigan, Oregon, and Vermont, submit this brief supporting the appellants. The Amici States have a strong interest in ensuring their traditional powers to regulate land use is respected. Amici States have a long history of regulating land use, including environmental protection, land reclamation, and zoning. Amici States often exercise these powers through their local governmental units, including counties and cities. These regulations serve multiple critical functions that benefit the health, welfare, and economic security of the citizens of Amici States, and preserve the use of enjoyment of their properties. Such land use regulations are traditional exercises of state sovereign police powers.

Congress's recognition of state sovereignty over land use is embodied in the Pipeline Safety Act's non-preemption of pipeline routing decisions and reflected in opinions by multiple Courts of Appeals finding no preemption of state and county land use regulations relating to pipelines. The 8th Circuit panel decision, however, incorrectly viewed the ordinances passed by Shelby and Story Counties as safety standards that were preempted by the PSA. In doing so, the panel majority did not appropriately consider that local routing decisions and land reclamation may incidentally impact safety while not being safety standards. The panel majority decision also conflicts with decisions from the 4th and 5th Circuit Courts of Appeals that have upheld similar ordinances.

Appellate Case: 23-3758     Page: 3     Date Filed: 07/10/2025 Entry ID: 5536849

The Amici States file this brief under Fed. R. App. P. 29(b)(2). No other party or person wrote or funded this brief. *See* Fed. R. App. P. 29(a)(4)(E).

Appellate Case: 23-3758     Page: 4     Date Filed: 07/10/2025 Entry ID: 5536849

# TABLE OF CONTENTS

**Page**

STATEMENT UNDER FED. R. APP. P. 29(a)(4)(D) ................................................ i

TABLE OF AUTHORITIES ...................................................................................... v

ARGUMENT ............................................................................................................. 1

I.  THE COURT SHOULD GRANT REHEARING BECAUSE PREEMPTION OF ROUTING DECISIONS AND LAND RECLAMATION—POWERS TRADITIONALLY RESERVED FOR THE STATES—ARE EXCEPTIONALLY IMPORTANT QUESTIONS .................................................................................... 1

    A.  The Presumption Against Preemption is Particularly Strong in Areas of Historic State Police Powers, Like Land Use Regulation .................................................................................... 1

    B.  The Pipeline Safety Act's Express Preemption of Safety Standards Is Narrow and Further Limited by the Express Non-Preemption of Routing Decisions ............................................... 2

    C.  The Counties' Setback and Abandonment Ordinances Are Not Safety Standards and Are Thus Not Preempted by the Pipeline Safety Act ............................................................................ 4

II.  THE COURT SHOULD GRANT REHEARING BECAUSE THE PANEL MAJORITY'S DECISION CONFLICTS WITH PRECEDENT OF OTHER COURTS OF APPEALS ADDRESSING SIMILAR ROUTING ORDINANCES ............................. 8

CONCLUSION ........................................................................................................ 10

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 29. ......................... 12

CERTIFICATE OF COMPLIANCE WITH 8TH CIR. R. 28A(h)(2) ..................... 13

CERTIFICATE OF SERVICE ............................................................................... 14

Appellate Case: 23-3758    Page: 5    Date Filed: 07/10/2025 Entry ID: 5536849

ADDENDUM ..............................................................................Add. 001

Appellate Case: 23-3758     Page: 6     Date Filed: 07/10/2025 Entry ID: 5536849

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) ............................................................... 2, 3

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992) ............................................................... 5

*Hillsborough County, Fla. v. Automated Med. Labs., Inc.*,
471 U.S. 707 (1985) ............................................................... 2

*Kinley Corp. v. Iowa Utilities Bd.*,
999 F.2d 354 (8th Cir. 1993) ................................................. 6, 7

*Portland Pipe Line Corp. v. City of S. Portland*,
288 F.Supp.3d 321 (D. Me. 2017) ....................................... 3, 4

*Rapanos v. United States*,
547 U.S. 715 (2006) ............................................................... 2

*Riegel v. Medtronic, Inc.*,
552 U.S. 312 (2008) ............................................................... 2

*Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*,
608 F.3d 200 (5th Cir. 2010) ............................................ 3, 8, 9

*Washington Gas Light Co. v. Prince George's Cnty. Council*,
711 F.3d 412 (4th Cir. 2013) .................................................. 9

*Wyeth v. Levine*,
555 U.S. 555 (2009) ............................................................... 2

v

**State Cases**

*Minn. Ctr. for Env. Advoc. v. Minn. Dept. Nat. Res.*, No. A18-1956,
  2019 WL 3545839 (Minn. Ct. App. Aug. 5, 2019) ........................................... 5, 6

**Federal Statutes**

49 U.S.C. § 60104(c) ........................................................................... 3, 4, 5

49 U.S.C. § 60104(e) ........................................................................... 3, 4, 5

U.S. Const. art. VI, cl. 2 ....................................................................... 1

**Federal Rules**

Fed. R. App. P. 40 ................................................................................. 1, 8

**Federal Regulations**

49 C.F.R. § 195.2 ................................................................................. 6

**Other Authorities**

H.R. Rep. No. 102-247 (1991) ............................................................... 3

Grand Prairie, Tx., Unified Development Code (2008) ........................... 9

Appellate Case: 23-3758    Page: 8    Date Filed: 07/10/2025 Entry ID: 5536849

# ARGUMENT

The Court should grant the petition to address exceptionally important questions regarding state land use regulations and because the panel decision conflicts with the decisions of other United States Court of Appeals. *See* Fed. R. App. P. 40(b)(2)(C)-(D).

## I.   THE COURT SHOULD GRANT REHEARING BECAUSE PREEMPTION OF ROUTING DECISIONS AND LAND RECLAMATION—POWERS TRADITIONALLY RESERVED FOR THE STATES—ARE EXCEPTIONALLY IMPORTANT QUESTIONS

The Court should accept the petition and reverse the panel majority's decision that the county setback and abandonment ordinances are preempted by the Pipeline Safety Act. One factor in granted hearing is whether the decision involves "one or more questions of exceptional importance[.]" Fed. R. App P. 40(b)(2)(d). At issue here are the exceptionally important rights of Iowa, through Shelby and Story Counties ("the Counties"), to exercise its traditional powers to regulate land use. Iowa similarly may require reclamation of land impacted by the pipeline once it has permanently ceased serving its purpose of carrying hazardous liquids. Those powers are qualitatively different from regulating how a pipeline operator must design, construct, maintain, test, and operate the pipeline.

### A.   The Presumption Against Preemption is Particularly Strong in Areas of Historic State Police Powers, Like Land Use Regulation

The preemption doctrine derives from the Supremacy Clause of the United States Constitution. *See* U.S. Const. art. VI, cl. 2. Based on this doctrine, a federal

Appellate Case: 23-3758     Page: 9     Date Filed: 07/10/2025 Entry ID: 5536849

law can supersede a state law, but *only* if Congress intended it to do so. *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009) ("[R]espect for the states as independent sovereigns in our federal system leads [courts] to assume that Congress does not cavalierly pre-empt state [] law." (cleaned up)). County ordinances are analyzed identically to state law under the Supremacy Clause. *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

In determining Congressional intent, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (citation omitted). The "presumption against preemption is heightened where federal law is said to bar state action in fields of traditional state regulation" *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 334 (2008) "Regulation of land use . . . is a quintessential state and local power," *Rapanos v. United States*, 547 U.S. 715, 738 (2006).

### B. The Pipeline Safety Act's Express Preemption of Safety Standards Is Narrow and Further Limited by the Express Non-Preemption of Routing Decisions

The panel majority concluded that the PSA's express preemption of safety standards preempted the county ordinances. Express preemption exists if the federal law expressly states that it intends to preempt state or local laws on the same subjects. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). "If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the

2

question of the substance and scope of Congress' displacement of state law still remains." *Id.* The presumption against preemption applies even to express preemption. *See id.* at 77.

The PSA expressly preempts "safety standards for interstate pipeline facilities or interstate pipeline transportation." 49 U.S.C. § 60104(c). But recognizing traditional state sovereignty over their lands, the PSA "does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility." 49 U.S.C. § 60104(e). Indeed, A House Committee Report confirms that interstate oil pipelines "are subject to the routing and environmental assessment requirements of the individual states they traverse." H.R. Rep. No. 102-247, pt.1, at 13-14 (1991). The plain text and legislative history of the PSA both demonstrate that Congress did *not* intend the PSA to preempt state and local authority. *See Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 211 (5th Cir. 2010) ("[T]he [Pipeline Safety Act] itself only preempts *safety* standards.") (emphasis in original); *Portland Pipe Line Corp. v. City of S. Portland*, 288 F.Supp.3d 321, 430-31 (D. Me. 2017) (relying in part on the limitation in section 60104(e) to conclude that a prohibition on crude oil transfers is not preempted by the PSA).

3

**C.     The Counties' Setback and Abandonment Ordinances Are Not Safety Standards and Are Thus Not Preempted by the Pipeline Safety Act**

Iowa's authority, exercised through the Counties, to regulate land use is not preempted by the PSA. Specifically, express preemption does not apply to the Counties' setback and abandonment ordinances. Instead, the express *non-*preemption provision applies to the setback ordinance, while the abandonment ordinance is left reserved as a traditional sovereign power of Iowa over land reclamation. "Under their police power, states and localities retain their ability to prohibit pipelines altogether in certain locations." *Portland Pipe Line*, 288 F.Supp.3d at 430 (citation omitted). The Counties here sought to control the siting and routing of the pipeline, not to impose a "safety standard."

As an initial matter, the PSA is not intended to cover all aspects of environmental risk posed by pipeline siting and routing. The preemption clause in § 60104(c) is explicitly limited by §60104(e), which does not authorize the federal government "to prescribe the location or routing of a pipeline facility." The setback ordinances, even if they serve in part to address safety, address the *location* of the pipeline—not the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, or maintenance of the pipeline. The express preemption clause does not include routing or siting concerns. Similarly, the abandonment ordinance is a simple land reclamation provision, which

is a longstanding "exercise of the police power of the state." *See Minn. Ctr. for Env. Advoc. v. Minn. Dept. Nat. Res.*, No. A18-1956, 2019 WL 3545839, at *1 (quoting Minn. Stat. § 93.44).

Moreover, even if § 60104(e) did not place routing issues explicitly outside of the Pipeline Safety Act, the setback and abandonment ordinances cannot fairly be characterized as a "safety standard" as that term is used in the PSA's express preemption clause. As noted above, preemption clauses are to be read narrowly in light of the presumption against the preemption of state police power regulations. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 519 (1992). A narrow reading of this clause would not allow for the conclusion that the Counties are attempting to "adopt or continue in force safety standards." 49 U.S.C. § 60104(c).

**First**, the setback ordinance is a prototypical routing ordinance. The panel majority incorrectly found that because the ordinance applied to both "economically developed and remote areas," then the ordinance must be directed to safety. But people who live in "economically developed" and "remote areas" possess an equal right not to have the eyesore and disruption that a pipeline can have on the use, enjoyment, and value of their lands. So too with the setbacks for specific facilities like churches, schools, nursing homes, and the like. These ordinances instead "fit comfortably within a local land use ordinance" that are not preempted by the PSA. Op. at 19 (Kelly, J., dissenting in part). Simply put, the PSA neither preempts nor

5

otherwise conflicts with Iowa's sovereign power to dictate the *location* of pipelines that cross its lands, including where pipelines may *not* cross.

**Second**, the abandonment provision only requires that once a pipeline owner decides to abandon a pipeline, it must remove the pipeline and restore the land to its original state if the property owner requests so. This is a basic land reclamation provision that is within the traditional province of the states. *See Minn. Ctr. for Env. Advoc.*, 2019 WL 3545839, at *1. Notably, the panel majority did not even analyze whether the abandonment provision is a preempted "safety standard." Instead, the majority simply speculated that because an abandoned pipeline could hypothetically be used in the future, that the counties lacked the ability to enforce the ordinance. But that analysis is circular. If a pipeline owner no longer intends to use the pipeline to transport hazardous liquids (i.e. abandons the pipeline), then it no longer falls within the scope of the PSA. Indeed, as the dissent correctly noted, the Pipeline and Hazardous Materials Safety Administration—a federal agency that implements the PSA—has defined the term "abandoned" to mean "permanently removed from service." 49 C.F.R. § 195.2. The abandonment provision is not a safety standard preempted by the PSA.

Contrary to the panel majority's conclusion, this Court's decision in *Kinley Corp. v. Iowa Utilities Bd.*, does not prohibit the setback and abandonment ordinances here. 999 F.2d 354, 357 (8th Cir. 1993). In *Kinley*, this Court held that

6

the PSA preempted state law provisions that were "so related to federal safety regulations that they are preempted by the PSA with respect to interstate hazardous liquid pipelines." *Id.* at 360. But importantly, this Court did not find that the "environmental and damages remedies provisions" were preempted for resembling "safety standards." *Id.* Instead, this Court found that those provisions were not severable from the preempted provisions and were therefore preempted as well. *Id.*

The panel majority here misread *Kinley* when asserting that the case stood for the proposition that "nominally non-safety provisions are preempted by federal law if they nevertheless regulate safety." Op. at 6. *Kinley* does not reach so broadly. Instead, that case stands for the uncontroversial proposition that states cannot regulate "in the area of safety" for pipelines and such a law is only "invalid *to the extent it purports to do so*." 999 F.2d at 358 (emphasis added). The Counties' setback and abandonment ordinances are more like "environmental and damage remedies" than they are to a safety regulation, and so the *Kinley* decision does not support preemption in this case.

In sum, the setback and abandonment ordinances passed by the Counties are not "safety standards" but are instead routing and reclamation provisions that are not preempted by the PSA. Such decisions have been, and continue to be, the traditional role of the states in regulating land use.

7

## II. THE COURT SHOULD GRANT REHEARING BECAUSE THE PANEL MAJORITY'S DECISION CONFLICTS WITH PRECEDENT OF OTHER COURTS OF APPEALS ADDRESSING SIMILAR ROUTING ORDINANCES

Another factor on whether to grant rehearing is if the decision "conflicts with an authoritative decision of another United States court of appeals. Fed. R. App. P. 40(b)(2)(C). Here the panel majority's decision that the Counties' ordinances are preempted safety standards conflicts with decisions by other Courts of Appeals addressing similar ordinances.

Most directly, the 5th Circuit in *Texas Midstream Gas Servs., LLC v. City of Grand Prairie* held that a setback ordinance was not a safety standard, and thus not preempted by the PSA. 608 F.3d 200 (5th Cir. 2010). In attempting to distinguish *Texas Midstream*, the panel majority concluded that safety was the "primary motivation for the Counties' ordinances here, whereas is *Texas Midstream*, the primary motivation was aesthetics." Op. at 8. That purported distinction is undermined by a direct comparison of the ordinances themselves.

The County ordinances, even as characterized by the panel majority, are indistinguishable from the Grand Prairie ordinance in *Texas Midstream*. Like the County setback ordinances here, the Grand Prairie ordinance required different setback distances depending on the zoning district (i.e. building types). *Compare*

8

Op. at 6-8 *with* Grand Prairie, Tx., UDC art. 4, § 10 (4.10.2) (Add. 2).[1] The County setback and Grand Prairie ordinances also included the same setback requirements for rural (i.e. agricultural) and city (i.e. residential) zones. *See id.* In other words, the specific characteristics of the Counties' setback ordinances that the panel majority relied on as a "safety standard" are present in the Grand Prairie ordinance that the 5th Circuit concluded was *not* a safety standard. The panel majority's holding thus directly conflicts with the earlier 5th Circuit decision.

The ordinance at issue in the 4th Circuit's *Washington Gas Light Co. v. Prince George's Cnty. Council* decision goes even farther. 711 F.3d 412 (4th Cir. 2013). That zoning plan prohibited "*all* industrial usage," unlike the Counties' setback ordinances here that only require certain minimum distances. *Id.* at 415 (emphasis added). Indeed, the 4th Circuit, citing to *Texas Midstream*, reaffirmed that "the power to impose a zoning requirement," a traditional power of the states, "includes the power to preclude any proposed usage of the zoned area that cannot comply with such requirement." *Id.* at 421. The Counties, as instrumentalities of the State of Iowa, retain their traditional powers over land use as embodied in the setback and abandonment ordinances. The panel majorities decision to the contrary conflicts

---

[1] For ease, Amici States have excerpted the relevant section of the code. The full code is available at: https://www.gptx.org/files/sharedassets/public/v/10/ departments/planning/documents/complete-udc-04.24.23.pdf.

Appellate Case: 23-3758    Page: 17    Date Filed: 07/10/2025 Entry ID: 5536849

with earlier decisions by other Courts of Appeals, and this Court should grant the petition to resolve this Circuit split.

## CONCLUSION

The Court should grant the petition for rehearing because the panel majority's decision incorrectly impedes on state powers over regulating land use and conflicts with the decisions of other Courts of Appeals addressing similar ordinances.

Dated: July 10, 2025

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

*s/ Ryan V. Petty*
RYAN V. PETTY
Atty. Reg. No. 0401053
Assistant Attorney General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2134
(651) 300-7828 (Voice)
ryan.petty@ag.state.mn.us

*(Additional Counsel Listed on Following Page)*

10

## ADDITIONAL COUNSEL

DANA NESSEL
*Michigan Attorney General*
P.O. Box 30212
Lansing, Michigan 48909

DAN RAYFIELD
*Attorney General of Oregon*
1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. 29

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because this brief contains 2,145 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.


*s/ Ryan V. Petty*
Ryan V. Petty

12

## CERTIFICATE OF COMPLIANCE
## WITH 8th Cir. R. 28A(h)(2)

The undersigned, on behalf of the party filing and serving this brief, certifies

that the brief has been scanned for viruses and that the brief is virus-free.

*s/ Ryan V. Petty*
Ryan V. Petty

Appellate Case: 23-3758    Page: 21    Date Filed: 07/10/2025 Entry ID: 5536849

**CERTIFICATE OF SERVICE**

I certify that I caused this document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on July 10, 2025. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ Ryan V. Petty*
Ryan V. Petty

14